UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY ANN WU,

        Plaintiff,                                  Hon. Ellen S. Carmody

v.                                                  Case No. 1:05-CV-682

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON,

        Defendant.
_____/

## OPINION

This matter is before the Court on Defendant's Motion for Entry of Judgment, (dkt. #18), and Plaintiff's Motion for Entry of Judgment, (dkt. #21). On December 12, 2005, the parties consented to proceed in this Court for all further proceedings, including trial and an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Richard Alan Enslen referred this case to the undersigned. (Dkt. #11). For the reasons articulated below, Defendant's motion is **granted** and Plaintiff's motion is **denied**.

## BACKGROUND

On September 25, 2000, Plaintiff underwent a left total knee arthroplasty.[1] (Tr. 479). Following her surgery, Plaintiff treated with Dr. Thomas Malvitz, Dr. Stephen Winston, and Dr. Yalena Yavich. (Tr. 219-29, 313-14, 334, 347-80, 444-87, 508-31, 551-58, 567-76, 592-96, 603-05).

---

[1] Arthroplasty refers to a total joint replacement. *See* Osteotomy and Unicompartmental Knee Arthroplasty, available at http://orthoinfo.aaos.org/fact/thr_report.cfm?Thread_ID=263&topcategory=Knee (last visited on May 24, 2006).

Plaintiff subsequently received short term disability benefits pursuant to her employer's short term disability plan, administered by Defendant Liberty Life. (Tr. 74-75). On March 8, 2001, Plaintiff, having exhausted her short term disability benefits, began receiving benefits under her employer's long term disability plan, also administered by Liberty Life. (Tr. 75, 632). Under the terms of the long term disability plan, to receive benefits for longer than six months, Plaintiff must be rendered unable to perform "any occupation." (Tr. 607-08).

Treatment notes dated September 2, 2003, reveal that Plaintiff was "doing well" with her pain pump and that she was "tolerating this medication with no adverse effects." (Tr. 219).

On November 3, 2003, Plaintiff completed a questionnaire regarding her activities. (Tr. 255-56). Plaintiff reported that she was able to perform - with assistance - limited activities around her house. (Tr. 255). She also reported that she experienced difficulty walking. (Tr. 256).

On November 7, 2003, Plaintiff was examined by physical therapist, Jennifer Smith. (Tr. 231-32). Smith observed that Plaintiff was exaggerating her symptoms. (Tr. 231, 240-41). Specifically, Smith noted a distinct difference in the way Plaintiff ambulated into the clinic (when she was not being observed) as compared to the way in which she ambulated when escorted to the examination area. *Id.*

On January 10, 2004, Plaintiff fractured her left ankle. (Tr. 192). A February 20, 2004 examination (including x-rays) revealed that Plaintiff's left ankle was "healed and doing well." (Tr. 189). An April 7, 2004 examination revealed that Plaintiff's left ankle was "well healed" with "good" motion. (Tr. 190).

On June 30, 2004, Plaintiff was examined by Dr. Winston. (Tr. 172). Plaintiff reported that she had experienced an improvement in pain level using her pain pump, with no side effects. Plaintiff reported that she is able to go shopping and care for her house and yard. An examination of

Plaintiff's left knee revealed restricted range of motion, but was otherwise unremarkable. Dr. Winston reported that Plaintiff's "main restriction" was her inability to "walk distances." *Id.*

As part of its continual efforts to determine whether Plaintiff remained eligible to receive disability benefits, Liberty Life employed a private investigator to videotape Plaintiff's activities over a three day period beginning on December 6, 2004. (Tr. 157-67). The videotape is part of the administrative record in this case. (Dkt. #17). The investigator's written report is also part of the administrative record. (Tr. 157-67).

On January 10, 2005, Plaintiff completed a questionnaire regarding her activities. (Tr. 149-50). Plaintiff reported that she is able to perform a variety of activities, such as grocery shopping, cooking, cleaning, vacuuming, washing laundry, and caring for her personal needs. (Tr. 149). While Plaintiff reported that she experiences difficulty sitting or standing "for any length of time," she did not report experiencing any difficulty performing her reported activities. (Tr. 150).

On January 18, 2005, Dr. Winston reported that Plaintiff was capable of performing sedentary work. (Tr. 122-23).

In a January 18, 2005 questionnaire, Liberty Life asked Dr. Yavich if Plaintiff "was capable of a sedentary work capacity." (Tr. 130-31). The doctor did not directly respond to this question, but instead simply noted that Plaintiff "may not be able to sit for prolonged periods of time [with] her knees bent." *Id.*

On February 9, 2005, Dr. Winston completed a report concerning Plaintiff's impairments and the limitations imposed by such. (Tr. 125-26). The doctor reported that Plaintiff had experienced "marked" improvement in pain control and had improved her walking tolerance. (Tr. 126). The doctor

reported that Plaintiff could frequently sit and lift up to 10 pounds and occasionally stand and walk. (Tr. 125).

On March 8, 2005, Laura Doherty, a vocational case manager employed by Liberty Life, concluded that Plaintiff, if limited to the extent articulated by Dr. Winston and Dr. Yavich (see below), was capable of performing "a number of occupations." (Tr. 118-19). Specifically, Doherty concluded that Plaintiff was capable of performing the following the following occupations, as well as many related occupations: (1) office clerk, (2) conference room coordinator, (3) customer service clerk, (4) receptionist, (5) appointment setter, and (6) supply order clerk. *Id.*

On March 10, 2005, Dr. Winston reported that Plaintiff was capable of performing "full time sedentary work duties" subject to the following limitations: (1) she must be able to change positions every 30 minutes, (2) she cannot squat, bend, or kneel, (3) she can occasionally stand and walk, and (4) she can frequently sit. (Tr. 111-12).

On April 1, 2005, Liberty Life determined that Plaintiff was no longer entitled to receive disability benefits. (Tr. 106-10). This decision was based upon (1) the opinions provided by Dr. Winston and Dr. Yavich, (2) Plaintiff's responses to an activities questionnaire, (3) the results of video surveillance, and (4) the opinion of vocational consultant Laura Doherty. *Id.* Plaintiff appealed this determination. (Tr. 98).

On April 7, 2005, Dr. Yavich reported that Plaintiff was capable of performing "full time sedentary work duties" subject to the following limitations: (1) she must be able to change positions every 30 minutes, (2) she cannot squat, bend, or kneel, (3) she can occasionally stand and walk, and (4) she can frequently sit. (Tr. 100-01).

On July 5, 2005, Dr. Malvitz was deposed by Plaintiff's counsel. (Tr. 85-94). The doctor testified that he began treating Plaintiff following her knee replacement surgery. (Tr. 87-88). According to Dr. Malvitz, Plaintiff's condition had not improved between 2003 and 2005. (Tr. 92). When asked whether Plaintiff was capable of performing sedentary work activities, the doctor stated that "it would be difficult to predict if she could do so." (Tr. 93).

On July 11, 2005, Liberty Life denied Plaintiff's appeal. (Tr. 81-83). Plaintiff initiated the present action on September 30, 2005, challenging Liberty Life's decision to terminate her disability benefits. Both parties subsequently moved for entry of judgment.

## STANDARD

The parties have stipulated that "in reviewing the decision of Liberty Life denying Ms. Wu's claim for benefits under the Steelcase LTD Policy, the Court should apply the 'arbitrary and capricious' standard of review." (Dkt. #15). This stipulation is consistent with the terms of the disability policy, (Tr. 1-40), as well as the relevant legal authority. *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110-15 (1989); *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 616 (6th Cir. 1998). As is well recognized, the arbitrary and capricious standard "is the least demanding form of judicial review of administrative action." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003). Accordingly, if Defendant can "offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id.*

## ANALYSIS

As indicated above, Defendant's decision to terminate Plaintiff's disability benefits was based on the following items of evidence: (1) Plaintiff's responses to an activities questionnaire, (2) the results of video surveillance, (3) the opinions provided by Dr. Winston and Dr. Yavich, and (4) the opinion of vocational consultant Laura Doherty.

On January 10, 2005, Plaintiff completed a questionnaire regarding her activities. (Tr. 149-50). Plaintiff reported that she is able to perform a variety of activities, such as grocery shopping, cooking, cleaning, vacuuming, washing laundry, and caring for her personal needs. (Tr. 149). Plaintiff reported that she experiences difficulty sitting or standing "for any length of time," but did not report experiencing any difficulty performing her reported activities. (Tr. 150). As compared to previous questionnaires regarding her level of activity, (*see, e.g.,* Tr. 255-56), Plaintiff's responses to this questionnaire support the conclusion that her condition had, in fact, improved.

The video surveillance evidence, obtained over a three-day period in December 2004, contradicts Plaintiff's assertion that she is unable to perform sedentary work. The video shows Plaintiff walking significant distances without difficulty. While Plaintiff alleges that she requires a cane for ambulation, she was observed in the video walking prolonged distances without the use of a cane. Plaintiff was also observed carrying - without apparent difficulty - several bags of goods. The most that can be said in Plaintiff's behalf regarding the video is that she walks with a slight limp. While not insignificant, such is hardly disabling.

Dr. Winston and Dr. Yavich both concluded - in 2005 - that Plaintiff was capable of performing "full time sedentary work duties" subject to the following limitations: (1) she must be able to change positions every 30 minutes, (2) she cannot squat, bend, or kneel, (3) she can occasionally stand

and walk, and (4) she can frequently sit. (Tr. 100-01, 111-12). Based on this functional capacity, a vocational case manager concluded that Plaintiff was capable of performing "a number of occupations" including : (1) office clerk, (2) conference room coordinator, (3) customer service clerk, (4) receptionist, (5) appointment setter, and (6) supply order clerk. (Tr. 118-19).

Defendant has certainly articulated a "reasoned explanation," based on the evidence, in support of its decision to terminate Plaintiff's disability benefits. In support of her position, Plaintiff asserts that Defendant, before rendering its decision, erred by failing to obtain additional evidence or opinion from Dr. Malvitz. Plaintiff further asserts that when she later presented Defendant with such evidence, it failed to properly evaluate such. The Court is not persuaded.

First, Defendant did request additional evidence from Dr. Malvitz prior to making the decision to terminate Plaintiff's disability benefits. (Tr. 215). On November 2, 2004, Defendant sent to Dr. Malvitz a letter indicating that in order "[t]o evaluate Mary Wu's continued eligibility for disability benefits, we need updated medical information." *Id.* In response, Dr. Malvitz provided Defendant with five pages of treatment notes regarding his associate's treatment of Plaintiff's fractured left ankle which, as this evidence (and other evidence discussed above) indicated, healed without incident or difficulty. (Tr. 209-13).

Plaintiff later deposed Dr. Malvitz and provided Defendant with a copy of his testimony. Defendant properly evaluated this evidence in rendering its decision to terminate Plaintiff's benefits. As Plaintiff acknowledged at hearing, Dr. Malvitz last examined Plaintiff in 2003, long before Dr. Winston and Dr. Yavich expressed their opinions regarding Plaintiff's ability to work. Moreover, Dr. Malvitz did not offer any testimony which calls into question Defendant's decision or the evidence on which it rested. While Dr. Malvitz testified that Plaintiff's condition had not improved between 2003

and 2005, little (if any) weight can be accorded this opinion, as Dr. Malvitz did not examine Plaintiff during this period of time. Furthermore, when asked whether Plaintiff was capable of performing sedentary work activities, Dr. Malvitz did not indicate that Plaintiff could not perform such activities, but instead simply stated that "it would be difficult to predict if she could do so."

In sum, Defendant's decision in this matter is rational and supported by the evidence. As such, the Court cannot conclude that Defendant's decision was arbitrary or capricious.

## CONCLUSION

For the reasons articulated herein, Defendant's Motion for Entry of Judgment, (dkt. #18), is **granted**, and Plaintiff's Motion for Entry of Judgment, (dkt. #21), is **denied**. An Order consistent with this Opinion will enter.

Date: May 31, 2006                              /s/ Ellen S. Carmody
                                               ELLEN S. CARMODY
                                               United States Magistrate Judge